CHARLES LUDDEKE, JR., ET AL.

V.

AMANA REFRIGERATION, INC., ET AL.

Record No. 881160

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting and Lacy, JJ., and
Poff, Senior Justice

*Jerome P. Friedlander, II (Friedlander & Friedlander,* on brief), for appellants.

*Thomas L. Appler; Dana L. Scott, Jr. (Rhonda Wilson Paice; McGuire, Woods, Battle & Boothe; Doherty, Sheridan & Grimaldi,* on briefs), for appellees.

SENIOR JUSTICE POFF delivered the opinion of the Court.

The principal question raised on this appeal is whether, as the trial court ruled, the several remedies invoked by homeowners in their chancery suit against the seller and the manufacturer of a home heating, air conditioning, and hot water system were time-barred.

In January 1982, Charles Luddeke, Jr., and Marcia H. Luddeke, his wife, entered into a contract with C. B. Lucas Co., Inc., for the purchase of such a system manufactured by Amana Refrigeration, Inc. The seller's contract provided that the "[e]quipment warranties are limited to the warranty given by the manufacturer." Lucas installed the system in August 1982, the county made final inspection in September, and the Luddekes moved into their new home in November.

Almost immediately, the Luddekes began to experience difficulties with the operation of the system. Until June 1984, Lucas responded to all complaints with attempts to repair the defects. Thereafter, Amana engaged other agents to make repairs. Amana

abandoned its efforts in December 1986. On September 17, 1987, the Luddekes filed a bill of complaint against Amana and Lucas[1] seeking rescission of the sales contract, $250,000 in compensatory damages, and $300,000 in punitive damages. In five counts, the bill alleged (1) breach of express warranties, (2) breach of implied warranties, (3) false representation, (4) violation of the Virginia Consumer Protection Act, and (5) intentional infliction of emotional distress.

Following a hearing on special pleas filed by the respondents during which the chronology of relevant events was stipulated, the trial court ruled that counts one and two were barred by the four-year limitation fixed in Code § 8.2-725; that counts three and four were barred by the one-year limitation fixed in § 8.01-248; and that count five was barred by the two-year limitation fixed in § 8.01-243.

In a memorandum of law supporting their motion to reconsider, the Luddekes argued that the manufacturer's express warranties were warranties of future performance that "takes [them] out of the statute of limitations language in Section 8.2-725." Alternatively, the Luddekes contended that the respondents were equitably estopped to plead the statute of limitations as a defense to any of the five counts contained in their bill of complaint. The trial court overruled the Luddekes' motion, reaffirmed its ruling sustaining the respondents' special pleas, and entered a final decree denying rescission and dismissing the bill of complaint.

■ We consider first the Luddekes' allegation that the respondents breached "all warranties implied by law". Subject to the exception applicable to certain express warranties, "[a] breach of warranty occurs when tender of delivery is made . . . ." Code § 8.2-725(2). The Amana system was delivered in August 1982. The bill of complaint was filed September 17, 1987. The trial court ruled that the claim for breach of implied warranties was time-barred by the four-year time limitation fixed in Code § 8.2-725(1). We agree.

Concerning their claim for breach of express warranties, the Luddekes invoked the exception defined in the second subsection of the statute. Code § 8.2-725(2) provides in full:

---

[1] The complainants also joined "John Lucas" as a respondent. The parties agree that the proper name is "Charles Lucas".

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Each of Amana's three warranty documents was entitled "LIMITED WARRANTY". The first applied to the "INDOOR SECTION" for a period of one year; the second applied to the "OUTDOOR SECTION" for a period up to five years; and the third applied to the "WATER HEATING TANK" for a period up to 15 years. Each contained the following limitations, the first authorized by Code § 8.2-719(1)(a) and the second by § 8.2-719(3):

> Amana will provide a free replacement part, FOB Amana, Iowa, for any part found defective as to workmanship or material . . . . In no event shall Amana be responsible for any incidental or consequential damages.

The Luddekes contend on brief that "the express warranties made by Amana . . . constitute future performance warranties"; that the four-year time limitation did not begin to run until December 1986 when Amana discontinued efforts to correct the defects they had discovered in the system; and that the time limitation had not expired when the bill of complaint was filed. Rejecting that contention at trial, the court ruled that "[t]he warranty of 'future performance' exception does not apply in this case."

Arguably, Amana's express warranties, explicitly limited as each was to provide "a free replacement part . . . for any part found defective" within a limited period following delivery of the parent system are, implicitly, warranties of future performance of that part. For purposes of this opinion, we will assume without deciding that these warranties activated the future-performance exception to the four-year time limitation. In such case, as regards a claim for replacement of any component discovered to be defective within the time frame specified in its warranty, the bill of complaint would have been timely filed.

But the bill of complaint contained no prayer to enforce the limited warranties of replacement of defective parts. Rather, based upon the allegation that "the Defendants failed and refused . . . to replace said system with one that works", the bill sought replacement of the entire system and, notwithstanding the specific disclaimer in the warranty documents, consequential damages as well. Because the Luddekes failed to allege a breach of the express warranties given in this case, we uphold the trial court's ruling that the future-performance exception to the four-year time limitation was inapplicable to count one of the bill of complaint.

Even if their claims for breach of implied and express warranties are time-barred, the Luddekes say, "repair and replacement *promises* are not *warranties* [emphasis in original]". They maintain that they had a cause of action "for breach of the promise to repair or replace defective parts" and that, because the breach occurred and this cause of action accrued in December 1986, less than a year before suit was filed, their bill of complaint "had been timely filed." But Amana's documents contain no promise to *repair*, and, as we have said, the bill of complaint does not plead relief for breach of the promise to *replace* defective parts.

The Luddekes also challenge the trial court's rulings dismissing two of their other claims as time-barred. Count five claiming damages for intentional infliction of emotional distress, an action for personal injury, is governed by a two-year statute of limitations. Code § 8.01-243. Any such cause of action accrues and the time limitation begins to run when the tort is committed. The emotional distress allegedly suffered by the Luddekes was inflicted when they first learned that the defects they discovered could not be successfully repaired. *See Westminster Investing Corp.* v. *Lamps Unlimited*, 237 Va. 543, 379 S.E.2d 316 (1989). At the latest, that discovery was in 1984; suit was not filed until 1987; consequently, the trial court's ruling was correct.

The Luddekes complain that the trial court dismissed their prayer for rescission of the contract of sale *sua sponte*. As they say, "[r]evocation of acceptance is an appropriate remedy under the Uniform Commercial Code Section 8.2-608." This is a remedy available to a buyer for breach of warranty when the breach "has not been seasonably cured." Code § 8.2-608(2). However, "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . . . It is not effective until the buyer notifies the seller of it."

*Id. See Gasque* v. *Mooers Motor Car Co.*, 227 Va. 154, 161, 313 S.E.2d 384, 388-89 (1984).

■ Here, the Luddekes discovered the breach of the warranty of merchantability in 1982. The breach was not cured, then or ever, and notice of rescission was not given until demanded in the bill of complaint filed in 1987. We agree with the trial court that the remedy of revocation of acceptance was time-barred.

■ Finally, the Luddekes contend that the respondents were equitably estopped to plead the statute of limitations as a defense to their claims. "Elements necessary to establish equitable estoppel . . . are a representation, reliance, a change of position, and detriment." *T. . . v. T. . .*, 216 Va. 867, 873, 224 S.E.2d 148, 152 (1976). "At the very least," the Luddekes insist, "estoppel of the Defendants is a question of fact for the trier of fact to resolve and not for a trial judge on a Plea in Bar."

The Luddekes filed a bill of complaint, a suit in equity. They did not pray for an issue out of chancery, and the Chancellor became the trier of fact. The only evidence before her tending to show that the respondents had lulled the complainants into inaction was Mr. Luddeke's testimony, delivered in support of the motion to reconsider[2], that one of Amana's agents had led him to believe that "they were working on taking care of the problem" and that "very likely . . . they would replace the system."

The factfinder, having observed the witness and assessed his credibility, resolved all factual questions bearing upon the elements of equitable estoppel against the complainants and sustained the respondents' several pleas in bar. We cannot say that the Chancellor's decision was plainly wrong. *See Westminster Investing*, 237 Va. at 545, 379 S.E.2d at 317 (evidence that landlord gave "continued assurances that it would take appropriate measures" to correct continuing breaches of lease was insufficient to estop landlord from pleading statute of limitations); *Roy Stone Transfer Corp.* v. *Budd Co.*, 796 F.2d 720, 721-22 (4th Cir. 1986) (applying Virginia law, Code § 8.2-725).

Finding no error in the trial court's several rulings, we will affirm the final decree dismissing the bill of complaint.

*Affirmed.*

---

[2] A document prepared by the Luddekes detailing a history of the malfunctions in the system and attempts to repair was never admitted into evidence.