COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Ortiz and Senior Judge Petty
Argued at Lexington, Virginia

WINTERGREEN HOMESTEAD, LLC, PHILIP E. WINE,
  BARBARA HUDSON, GENE HUGHES AND
  LUCY EWING MARTIN

OPINION BY
JUDGE JUNIUS P. FULTON, III

v.       Record No. 0136-22-3

NOVEMBER 29, 2022

BETTIE W. PENNINGTON, RAY M. PENNINGTON,
  LIZELLE JACOBS, MARIA MAGDALENA BRINK AND
  BETTIE'S WINTERGREEN, LLC

FROM THE CIRCUIT COURT OF NELSON COUNTY
J. Frederick Watson, Judge

Nancy R. Schlichting (Shannon A. Delano; Flora Pettit PC, on
briefs), for appellants.

Heather H. Goodwin (Goodwin Law of Virginia, PLLC, on brief),
for appellees.

For over two centuries, members of the Harris and Coleman families were laid to rest in

what became known as the Wintergreen Family Cemetery. When established, the cemetery

occupied a portion of a 59-acre tract of land. The family home also occupied the same parcel,

albeit some distance away. Historically, visitors would access the cemetery via the ancestral

home's driveway and along the rear of the home—this "traditional access route" is the "path" at

issue in this case. The 59-acre tract has been partitioned and now subdivided into three separate

parcels. The cemetery is located on a 47-acre parcel, and two small adjacent parcels have been

conveyed outside the family. Appellants are descendants of persons interred in the cemetery and

the current owner of the 47-acre tract. Appellees are the former and current owners of the two

smaller parcels. Wintergreen Homestead, LLC, Philip E. Wine (Philip), Barbara Hudson, Gene

Hughes, and Lucy Ewing Martin (collectively "appellants") filed an action in the Circuit Court of Nelson County seeking declaratory and injunctive relief confirming the path as a "traditional access route" pursuant to Code § 57-27.1 and allowing appellants to utilize that path when visiting the cemetery. Following a bench trial, the trial court issued its ruling in a letter opinion dated October 12, 2021, finding that the path was a traditional access route within the meaning of Code § 57-27.1, but declining to grant the relief requested by appellants. The trial court found that Code § 57-27.1 applied only to owners of land on which the cemetery was located. Appellants timely appealed. For the following reasons, we affirm.

## I. BACKGROUND

At the center of this dispute is a cemetery located entirely on a 47-acre tract of land owned by Wintergreen Homestead, LLC (Wintergreen Homestead). Until 1993, the 47-acre tract was part of a larger 59-acre tract owned by Mary Harris Wine (Mrs. Wine). Mrs. Wine passed away in 1992, and her will devised the 59-acre tract to her four adult children, including Philip and Bettie W. Pennington (Bettie). Her will references the "Wintergreen Family Cemetery" and her intention that the Coleman family always have access to it.

In 1993, Mrs. Wine's children partitioned the property. The deed of partition allotted 12 of the 59 acres to Bettie. Philip received, along with the two other siblings, an interest in the remaining 47-acre tract, and later acquired sole ownership of that tract. Wintergreen Homestead, LLC is the successor to Philip's interest in the 47-acre tract, and it is on this tract that the family cemetery is located.

The 12-acre tract allotted to Bettie in 1993 has since been subdivided into two smaller parcels, both of which are now jointly owned by appellees Lizelle Jacobs (Jacobs) and Maria Magdalena Brink (Brink). Jacobs and Brink are unrelated to the Harris and Coleman families.

The ancestral home is located on the smaller of these two parcels now owned by Jacobs and Brink.

Over the years, various family members and descendants of deceased persons buried there have visited the cemetery. Until 2013 or 2014, visitors accessed the cemetery via the ancestral home's driveway and along the rear of the home. Accessing the cemetery via this route required visitors to enter onto and cross the two parcels of land now owned by Jacobs and Brink before reaching the 47-acre tract on which the cemetery is located. Around 2013 or 2014, Jacobs and Brink, who were then leasing one of the two smaller tracts, began refusing access over their property to those wishing to visit the cemetery. Thereafter, certain descendants wishing to access the cemetery began using another route to access the site, passing through the 47-acre tract from the east. This "east gate route" does not cross over either of the two smaller parcels of land owned by Jacobs and Brink, only the 47-acre tract on which the cemetery is located.

The trial court found that the original path through the ancestral home's driveway is a traditional access route pursuant to Code § 57-27.1. Nevertheless, it declined to grant appellants the declaratory and injunctive relief they sought, holding that:

> The cemetery access statute, given its plain meaning, obligates only "[o]wners of private property on which a cemetery or graves are located" to allow ingress and egress to the cemetery. There is nothing in the statute that would provide a similar obligation to owners of adjoining properties on which the cemetery or graves are not located. . . . Code § 57-27.1 does not give the family members and descendants of deceased persons buried in the cemetery the right to cross the two tracts of land owned by Jacobs and Brink.

The trial court's factual findings have not been contested and are not at issue in this appeal. Appellants appeal only the trial court's interpretation of Code § 57-27.1, arguing that the duties and prohibitions placed on landowners by the statute extend to "all landowners of property containing a traditional access route to a cemetery," without limitation or regard to whether the cemetery or gravesite is *actually located* on the landowner's property.

- 3 -

## II. STANDARD OF REVIEW

Appellants' assignment of error hinges on the interpretation of Code § 57-27.1, "a pure question of law subject to de novo review by this Court." *Renkey v. Cnty. Bd. of Arlington*, 272 Va. 369, 373 (2006) (quoting *Va. Polytechnic Inst. v. Interactive Return Serv.*, 271 Va. 304, 309 (2006)).

## III. ANALYSIS

The General Assembly enacted Code § 57-27.1 in 1993. The initial version of Code § 57-27.1 allowed "representatives of local historical commissions" to "enter upon the land of a private or family cemetery for the purpose of conducting official business, unless the property owner object[ed]." Code § 57-27.1 was subsequently amended in 2004, 2008, and 2011. The 2004 amendment was the most comprehensive; the General Assembly rewrote the entire statute, broadening the scope of persons whose access rights were protected by the statute. The present version of Code § 57-27.1(A) states:

> Owners of private property on which a cemetery or graves are located shall have a duty to allow ingress and egress to the cemetery or graves by (i) family members and descendants of deceased persons buried there; (ii) any cemetery plot owner; and (iii) any person engaging in genealogy research, who has given reasonable notice to the owner of record or to the occupant of the property or both. No landowner shall erect a wall, fence or other structure or device that prevents ingress and egress to the cemetery or grave, unless the wall, fence or other structure or device has a gate or other means by which ingress and egress can be accomplished by persons specified in this subsection. The landowner may designate the frequency of access, hours and duration of the access and the access route if no traditional access route is obviously visible by a view of the property.

Appellants argue that the trial court erred in concluding that this statute does not require Jacobs and Brink to allow appellants reasonable use of the traditional access route that runs

through the two smaller tracts of land.[1]  Specifically, appellants argue: (1) when read in its entirety, the plain meaning of the statute applies to all owners of property containing a traditional access route; (2) Code § 57-27.1 was enacted to protect the right of access via traditional access routes for family members and descendants of deceased persons buried in a cemetery, and appellants' interpretation accomplishes that legislative purpose; and (3) adopting the narrow interpretation of the trial court would lead to an absurd result.

Appellees argue in response that: (1) the plain meaning of the words used by the legislature illustrates the intention of the General Assembly to protect only the *ability* of the descendants of persons buried in cemeteries or graveyards to access those sites, not the *means* by which those sites may be accessed and (2) to hold otherwise would lead to an absurd result.

We agree with the trial court's interpretation of Code § 57-27.1.  Given the plain meaning of the words of the statute, Code § 57-27.1 applies only to landowners on whose land a cemetery or graves are located.

Appellants argue that the trial court placed undue focus on the first words of the statute, "[o]wners of private property on which a cemetery or graves are located," while overlooking the second and third sentences, which state:

> No landowner shall erect a wall, fence or other structure or device
> that prevents ingress and egress to the cemetery or grave . . . .  The
> landowner may designate the frequency of access, hours and

---

[1] At trial, appellants sought to establish their right to use the traditional access route pursuant to Code § 57-27.1, or alternatively, that a prescriptive easement had been established through the traditional access route on the two smaller parcels now owned by Jacobs and Brink. Appellants did not pursue theories of implied easement by prior use or necessity.  *See, e.g.*, *Davis v. Henning*, 250 Va. 271 (1995) (necessity); *Russakoff v. Scruggs*, 241 Va. 135 (1991) (implication, prior use, or "quasi-easement").  In certain cases, other states have applied these related common law doctrines of implied easement by prior use or necessity to the issue of cemetery access.  *See, e.g.*, *McCoy v. Barr*, 275 P.3d 914 (Kan. App. 2012) (affirming the finding of an implied easement by necessity where cemetery was completely landlocked by a separate parcel of land).  Those two theories are not before the Court today, however.  Further, appellants have not appealed the trial court's denial of their prescriptive easement claim.  We are concerned only with the proper interpretation of Code § 57-27.1.

duration of the access and the access route if no traditional access route is obviously visible by a view of the property.

It is axiomatic that in attempting to glean the legislative intent of a statutory enactment, we must consider the statute as a whole, "giving to every word and every part of the statute, if possible, its due effect and meaning." *Chesapeake & Ohio R.R. v. Hewin*, 152 Va. 649, 653 (1929). And further, to ascertain its plain meaning, courts have a "duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." *Va. Elec. and Power Co. v. Bd. of Cnty. Supervisors of Prince William Cnty.*, 226 Va. 382, 387-88 (1983). Appellants argue that, in viewing the statutory language as a whole, the second and third sentences clarify the meaning of the statute and establish that the duty to allow ingress and egress applies not only to owners of land on which a cemetery or graves are located, but also to landowners whose property contains a traditional access route to any such burying places.

However, as appellees point out, the first sentence of Code § 57-27.1, "[o]wners of private property on which a cemetery or graves are located shall have a duty . . ." clearly illustrates that the statute only applies to landowners of property *on which a cemetery or graves are actually located*. The plain meaning of the statute favors appellees' interpretation. Because the two smaller parcels here do not have a cemetery or graves located on them, Jacobs and Brink are not "landowners" within the meaning of the statute and thus are not subject to the duty to allow ingress and egress that the statute imposes. To hold otherwise would require us to rewrite the statute. The trial court's construction gives effect to the General Assembly's intent without causing the Court to usurp the legislature's authority to enact statutes. Whenever interpreting and construing a statute, we are mindful that "[c]ourts are not permitted to rewrite statutes." *Boynton v. Kilgore*, 271 Va. 220, 230 (2006) (alteration in original) (quoting *Anderson v. Commonwealth*, 182 Va. 560, 566 (1944)). Further, "[w]hen interpreting statutes, courts 'ascertain and give effect to the intention of the legislature.' That intent is usually self-evident

- 6 -

from the words used in the statute." *Id.* at 227 (quoting *Chase v. DaimlerChrysler Corp.*, 266 Va. 544, 547 (2003)). The General Assembly could have broadened the scope of Code § 57-27.1 by stating "owners of private property on which a cemetery or graves, *or a traditional access route thereto*, are located," yet it chose not to.[2] We decline to alter the words of Code § 57-27.1 at appellants' request.

Further, as appellees correctly point out, this interpretation can easily be harmonized with the later language upon which appellants seize, that "[t]he landowner may designate the frequency of access, hours and duration of the access and the access route if no traditional access route is obviously visible by a view of the property." The purpose of this subsequent sentence is not to extend the scope of the statute to include landowners of adjoining parcels that contain a traditional access route, but instead to clarify exactly how a landowner, referred to earlier in the text of the statute, may restrict and constrain access to the cemetery or graveyard. In other words, this language is meant only to clarify what route a descendant may utilize to access the cemetery or graveyard. If an obviously visible traditional access route already exists on the

---

[2] Other states have explicitly codified the right to cross over property on which no cemetery is located when no other means are available. *See, e.g.*, N.C. Gen. Stat. Ann. § 65-102 (West 2022) (an individual may seek an order allowing the individual to enter private property when "[t]here are reasonable grounds to believe that [a] grave or abandoned public cemetery is located on the property or it is reasonably necessary to enter or cross the landowner's property to reach the grave or abandoned public cemetery"); Vt. Stat. Ann. Tit. 18 § 5322 (West 2022) ("Any person wishing to have a temporary right of entry over private land in order to enter a graveyard enclosure to which there is no public right-of-way may apply in writing to the selectboard or cemetery commissioners . . . . The owner or occupier of the land may recommend a place of crossing which, if reasonable, shall be the place designated by the selectboard or cemetery commissioners."); Mo. Ann. Stat. § 214.132 (West 2020) ("Any person who wishes to visit an abandoned family cemetery or private burying ground which is completely surrounded by privately owned land, for which no public ingress or egress is available, shall have the right to reasonable ingress or egress for the purpose of visiting such cemetery. This right of access to such cemeteries extends only to visitation during reasonable hours and only for purposes usually associated with cemetery visits."). While the General Assembly could have enacted a statute similar to these, it chose not to do so.

parcel, then that is the route that the landowner must allow descendants to utilize; but if not, then the landowner may designate a route which descendants must use.

This interpretation is consistent with the legislative purpose of Code § 57-27.1. Appellants argue that Virginia has long recognized the right of access of family members and descendants of persons buried in private cemeteries. This is true; however, though the enactment of this statute clearly illustrates the General Assembly's intent to protect the right of access of family members and descendants of deceased persons buried in cemeteries and graveyards, we do not agree that the statute, in all cases, protects the *means* by which those family members or descendants may access the cemetery or graveyard without limitation. Here, the appellants may access the cemetery via the east gate route. This interpretation strikes the appropriate balance between protecting family members and descendants' rights to access burial sites and a landowner's property rights in Virginia.

Finally, the narrow interpretation advanced by the appellees neither offends logic, nor renders any part of the statute meaningless. Contrary to appellants' contention, our ruling today will not "render[] the statute 'otherwise incapable of operation.'" *See Tvardek v. Powhatan Village Homeowners Ass'n, Inc.*, 291 Va. 269, 280 (2016) (quoting *Butler v. Fairfax Cnty. Sch. Bd.*, 291 Va. 32, 37 (2015)). "A classic example would be a literal, but entirely dysfunctional, interpretation 'validating' an act while simultaneously 'nullifying' it." *Id.* (quoting *Frey v. Jefferson Homebuilders, Inc.*, 251 Va. 375, 378 (1996)). Appellants contend that, in adopting appellees' narrow interpretation of the statute today, we "open[] the door to allow people to convey property to avoid the obligations imposed by the statute." Appellants are partially correct; our ruling today may open the door for landowners to convey a portion of their property containing a traditional access route to a third party, thereby removing the property conveyed from the scope of the statute. However, a landowner of property upon which a cemetery or

graves are located still has the duty to provide reasonable ingress and egress. And further, the common law doctrines of easement by prescription, prior use, or necessity remain unaffected by our interpretation of Code § 57-27.1.

This balance between a landowner's property rights and the right of family members and descendants to access cemeteries or graveyards where their ancestors are buried was clearly expressed by the General Assembly through Code § 57-27.1. Our interpretation does not offend logic, as those same family members and descendants will still be able to access cemeteries and graveyards; they may just have to access those sites via a different route, subject to the reasonable restraints put in place by the landowner.

## IV. CONCLUSION

Accordingly, we hold that the obligations imposed on landowners by Code § 57-27.1 apply only to landowners of property on which cemeteries or graveyards are located; landowners of adjoining property on which only traditional access routes exist, but no cemetery or graveyards are present, are not subject to the obligations imposed by the statute. Consequently, the trial court did not err in declining to grant the declaratory and injunctive relief sought by appellants. We therefore affirm the trial court's judgment.

*Affirmed.*